[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S TREFZ MOTION TO DISQUALIFY JUDGE SADEN
There are two separate cases involved in these actions against the Conservation Commission of the Town of Fairfield. These motions are filed by only one plaintiff's counsel in theTrefz case (CV90-0275487S). A similar motion has been filed in the Glendenning case by defendant Trefz (CV84-0214875S).
The motions in question are signed by William B. Shepro for the office of Willinger, Shepro, Tower Bucci and alleges a CT Page 9844 violation of the Code of Judicial Conduct, Canon 3, Subsection C(1) which reads as follows:
"C. Administrative Responsibilities.
 (1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business."
The motions also allege a violation of C.G.S. § 51-39.
The motions refer to a public hearing before the Zoning Commission of the City of Bridgeport in September 1994 at which Judge Saden appeared pro se in opposition to an application for a funeral home to be located near Judge Saden's home and property which would require a change of zone of Spadaccino's lot from a Residence A category to a commercial zone category. Mr. Spadaccino was represented by Attorney Willinger.
The motions allege that Judge Saden "engaged in several verbal altercations and character assaults on Attorney Willinger." As a result of these "altercations and character assaults" it is alleged that "Judge Saden's impartiality to act on a case in which Attorney Willinger is counsel might reasonably be questioned." The motions requested oral argument but no testimony was required.
The zoning case in question is on file in the Clerk's Office of the Superior Court (CV94-0317618S) and it contains a very detailed stenographic report of what occurred at the public hearing. From a reading of these minutes one can clearly ascertain everything that occurred at the hearing. Judge Saden appeared for himself personally in opposition to the zone change requested and submitted a detailed written and oral statement analyzing the case law supporting his opposition. The minutes of the public hearing indicate a noticeably solicitous attitude toward Attorney Willinger of the chairlady of the Zoning Commission who conducted the hearing. Notwithstanding this partiality toward Attorney Willinger, nowhere in the detailedminutes of the public hearing is there the slightest indicationof any "verbal altercation" or any "character assault" uponCT Page 9845Attorney Willinger. Had there been any such "verbal altercation" or "character assault" the very solicitous chairlady would have without doubt injected some comment of reprimand on the record, but none can be found anywhere in the minutes.
Judge Saden as an individual made a lawyer's argument in support of his opposition to the change of zone and made no attack of any kind against Attorney Willinger except his argument for the zone change. Judge Saden's opposition to the zone change was based upon his conception of the law which was different from Attorney Willinger's and was expressed in clear language as the minutes disclose. If this is a "verbal altercation" or a "character assault," it can only be the product of Attorney Willinger's active imagination because they did not occur. Legal arguments between lawyers can hardly be described in such terms as Attorney Shepro's motion alleges. Judge Saden's statements, from a reading of the minutes of the public hearing, are the same with which any counsel in a zoning case would frequently be confronted if he were arguing a zoning change in court. The analogy is reasonably apposite. To label such statements, as they are characterized in the motion, would ascribe everything that a court might assert in opposition to a counsel's argument as a "verbal altercation" and a "character assault" which would, according to the claim of the present motions before the court, require disqualifying the court forever expressing clearly a position opposite to that of counsel advocating a point of view different from the court's.
The court can find nothing that violates either C.G.S. § 51-39
or Canon 3, Subsection C(1) and therefore must deny these motions.
As a footnote to this motion but totally unrelated to it, counsel in both the Glendenning case and the Trefz case will be interested to know that since last May Judge Saden talked with the then administrative judge about Judge Saden's desire to have these cases referred to another judge for a fresh outlook. It was suggested that he wait until September 1 for such a change. Judge Saden has been involved with a number of preliminary hearings and technicalities in these matters to the point where pleadings and letters have accumulated to the height of almosttwo feet. It is understandable why Judge Saden has become "fed up" with these cases. In addition only within the past two weeks has a very substantial transcript of a missing public CT Page 9846 hearing before the Fairfield Conservation Commission come to light and has been added "to the pile." It has been missing for a long time which may have presented problems to the court had it not finally been found. Judge Saden has been informed in the near future another judge will be taking over what has become a rather prodigious accumulation of documents in these two files.
THE COURT
BY __________________________ GEORGE A. SADEN JUDGE TRIAL REFEREE